IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:26-CV-00508-KDB-MTO

| | |
|---|---|
| **DACIE CHEWITT,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PSA AIRLINES, INC., ET AL.,**<br><br>**Defendants.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant PSA Airlines, Inc.'s ("PSA") Motion to Dismiss (Doc. No. 15) the claims of its former flight attendant Dacie Chewitt, alleging that she was subject to race discrimination in violation of 42 U.S.C. § 1981 and invasion of privacy under North Carolina law when she was terminated based on a required drug screen. Because Plaintiff's claims against PSA involve interpretation and application of the Collective Bargaining Agreement ("CBA") between her flight attendant union and PSA (Doc. No. 10-1) and are otherwise preempted by federal drug testing regulations, the Court will **GRANT** the motion. This action will proceed against the remaining Defendants, who have answered the Complaint. (Doc. No. 20).

## I. LEGAL STANDARD

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute, *see* Fed. R. Civ. P. 12(b)(1), and Plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 453 (4th Cir. 2012) (Rule 12(b)(1) "addresses whether [a party] has a right to be in the district court at all and whether the court has the power to hear and dispose of

his claim."). "[F]ederal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) (quotation omitted); *see Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

There is no presumption that a federal court has subject-matter jurisdiction. *See Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). To determine whether subject matter jurisdiction is proper, the Court may consider evidence beyond the pleadings. *Evans*, 166 F.3d at 647; *Rorie v. United States*, No. 3:26-CV-00011-KDB-DCK, 2026 WL 1998505, at *1 (W.D.N.C. July 10, 2026). Here, that includes the CBA. *See Davis v. Am. Airlines*, No. 3:19-CV-44-MOC-DSC, 2019 WL 2719909, at *3 (W.D.N.C. June 28, 2019) (considering CBA attached as exhibit to the defendant's Rule 12(b)(1) and (6) motion without converting the proceeding to one for summary judgment).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions,

elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992); *see Macon v. Fed. Emergency Mgmt. Agency*, No. 3:25CV00754-KDB-DCK, 2026 WL 612524, at *2 (W.D.N.C. Mar. 4, 2026).

## II. FACTS AND PROCEDURAL HISTORY

PSA employed Plaintiff, who is Black, as a flight attendant based in Charlotte. (Doc. No. 14 ("First Amended Complaint" or "FAC") ¶¶ 2, 10. On July 10, 2024, she was selected for a random federally mandated drug test. *Id.* ¶ 11. The collector was Defendant Julie Dominique, who is White and is the owner of Defendant Carolina Mobile Collections, LLC ("CMC"), which PSA had engaged as its service agent to perform federally mandated collections. *Id.* ¶¶ 5, 11.

In summary, Plaintiff alleges that CMC improperly documented the drug test and subjected her to an "observed collection" and intrusive search that was not required of other PSA employees tested at the time (two of whom are White and one is Black). *Id.* ¶¶ 14-15, 17-18. Ultimately, Dominque allegedly called PSA's Manager of Security and Compliance and reported that Plaintiff "has a device on her," then discarded her urine specimens. *Id.* ¶¶ 23-24, Dominique wrote on the report form: "Refusal -- Donor had a device in both cheeks." *Id.* ¶¶ 27-28.

On July 19, 2024, at a meeting attended by Plaintiff along with her union representative, PSA terminated Plaintiff for a "violation of the Company's Drug and Alcohol Policy." *Id.* ¶¶ 32-33. As a member of the Association of Flight Attendants-CWA ("AFA") Union, Plaintiff was entitled to file a grievance challenging the termination under the AFA's negotiated collective bargaining agreement with PSA. *See* Doc. No. 1-2 ¶¶ 48, 87; Doc. No. 10-1. The CBA "governed the terms and conditions of her employment, including the procedures for [drug screening,] discipline and termination[,]" and resolving employee grievances. (Doc. No. 10-1). With her union representative present, Plaintiff participated in at least two grievance meetings at which she presented her evidence, but she was unsuccessful in changing the termination decision. *See* Doc. No. 14 ¶¶ 35–37, 39-41.

This lawsuit followed on May 16, 2026. The FAC asserts two claims against PSA: race discrimination under 42 U.S.C. § 1981 (First Claim) and intrusion upon seclusion, against PSA on a ratification theory (Fifth Claim). *Id.* ¶¶ 48–58, 71–73. Plaintiff's original Complaint made explicit Plaintiff's allegations that Plaintiff was "a party" to the CBA her union negotiated with PSA, which "governed the terms and conditions of her employment, including the procedures for [drug screening,] discipline and termination[,]" and PSA terminated her "without following the procedures required by applicable regulations and the collective bargaining agreement." (Doc. No. 1-2 ¶¶ 56-58, 65, 69, 86-90). However, the Amended Complaint more vaguely alleges that Plaintiff worked for PSA pursuant to a "contractual employment relationship," although the FAC continues to allege in detail PSA's refusal to change the termination decision during her appeal of PSA's termination through the CBA required "grievance process." (Doc. No. 14 ¶¶ 34-39, 50; Doc. No. 10-1 ¶ 16).

PSA moved to dismiss the Amended Complaint on September 22, 2026. The Motion has been fully briefed and is ripe for the Court's ruling.

## III. DISCUSSION

PSA has moved to dismiss Plaintiff's Amended Complaint with prejudice pursuant to Fed. R. Civ. P 12(b)(1) and (6). Specifically, PSA argues that Plaintiff's Section 1981 claim should be dismissed because it requires interpretation or application of the CBA and is therefore precluded or preempted by the Railway Labor Act, 45 U.S.C. §§ 151, *et seq* ("RLA"). Similarly, PSA seeks dismissal of Plaintiff's state law invasion of privacy claim based on its preemption by federal drug testing regulations. PSA also contends that Plaintiff's claims should be dismissed on the merits for failing to state a claim. The Court finds that both of Plaintiff's claims are precluded or preempted by the cited federal statutes.

The RLA governs labor relations in railroads and airlines. *See Davis*, 2019 WL 2719909, at *4. Most relevant here, the statute contains a mandatory dispute resolution procedure culminating in arbitration for conflicts "growing out of the interpretation or application of a collective bargaining agreement"—what are termed "minor disputes." *See Polk v. AMTRAK Nat'l R.R. Passenger Corp*., 66 F.4th 500, 503-04 (4th Cir. 2023). Also, "[w]here an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement." *Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 307 (1989). To avoid such "minor disputes" becoming multiple federal lawsuits that might undermine the stability of CBAs and potentially lead to strikes, the RLA preempts state law claims and precludes litigation over CBA disputes. *See Polk*, 66 F.4th at 504-05; *Lee v. Norfolk & S. Ry*., 912 F. Supp. 2d 375, 379 (W.D.N.C. 2012) (RLA preempts and precludes "minor disputes," which are those that "grow out of grievances or out of the

interpretation or application of agreements covering rates of pay, rules, or working conditions."). Therefore, the question the Court must answer to decide this Motion is whether "resolving the federal or state claim require[s] interpretation or application of a CBA." *See Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 703 (4th Cir. 2023) (federal law claim preclusion); *Hawaiian Airlines v. Norris*, 512 U.S. 246, 261-63 (1994) (state law claim preemption). If it does, then both federal and state law claims are precluded. *See Giles*, 59 F.4th at 703; *Hawaiian Airlines*, 512 U.S. at 261-63.

After a careful review of the FAC and the full record,[1] the Court concludes that resolving Plaintiff's claims will necessarily involve an interpretation or application of the CBA. The gravamen of Plaintiff's Section 1981 claim against PSA[2] in the FAC is that PSA should have handled its investigation and the grievances filed by Plaintiff related to her "failed" drug test differently and would have done so if Plaintiff was White. Although the allegation of race being a

---

[1] The Parties disagree about the relevance of the Plaintiff's specific allegations in the original Complaint with respect to the CBA. While Plaintiff's FAC is the operative pleading and a plaintiff can certainly modify or correct factual allegations and remove claims in an amended pleading (including in response to a motion to dismiss), Plaintiff may not simply omit or obscure obvious facts to avoid dismissal. That is, the Court is not required to ignore the necessary implications of previously pled facts that have not been disavowed or changed and indeed continue to be implied by the operative pleading. *See Larsen v. AirTran Airways, Inc.*, 2007 U.S. Dist. LEXIS 58601, at *11-13 (M.D. Fla. Aug. 10, 2007) (viewing the plaintiff's original complaint allegations related to CBA violations as being relevant to whether the RLA preempted his amended claims which purposefully deleted reference to such allegations to avoid dismissal); *see also Monroe v. Mo. Pac. R.R.*, 115 F.3d 514, 518 (7th Cir. 1997) (granting Rule 12(b)(1) motion on RLA preclusion and preemption grounds despite the plaintiff's assertions that his claims did not require interpretation or application of the CBA because, among other things, the plaintiff expressly alleged in prior lawsuits that his discharge violated the CBA). Thus, the Court may and does conclude that the FAC's reference to a "contractual employment relationship," FAC ¶50, refers to the CBA, particularly in light of the FAC's detailed description of the "grievance process" that is a hallmark of union/employer agreements and the absence of any pleading of a different contractual relationship.

[2] Plaintiff asserts a separate Section 1981 claim against CMC and Dominique, which is not at issue in this Motion.

"but for" cause of PSA's conduct is wholly conclusory,[3] Doc. No. 14 ¶ 57, the allegations of PSA's procedural misconduct underlying Plaintiff's claim will require the interpretation and application of the CBA provisions that govern PSA's right to impose discipline and the handling of grievances.[4]

For example, Plaintiff alleges that, "PSA is liable for its own decision to terminate Plaintiff on the strength of that account without interviewing her, without reviewing the video, and without requiring the collector to substantiate any version of it. In the alternative, PSA is liable because the collector's race-based treatment of Plaintiff was the proximate cause of a termination PSA adopted without exercising independent judgment." Those allegations are relevant only to the extent that the conduct violates the CBA.[5] If PSA properly followed the CBA then that conduct cannot supply an inference of unlawful discrimination; if not, then it might be relevant to Plaintiff's claim (if connected to an allegation that PSA handled the discipline of comparable Black and

---

[3] The absence of allegations establishing plausible—rather than merely speculative—circumstances that raise a reasonable inference of unlawful discrimination is an independent reason for dismissal of Plaintiff's Section 1981 claim. *See Barnes v. Quest Diagnostics Clinical Lab'ys, Inc.*, No. 1:22-CV-736, 2024 WL 1307217, at *8 (M.D.N.C. Mar. 27, 2024) (listing the four elements of a Section 1981 claim and holding that, as to the fourth element, a plaintiff must plead circumstances that give rise to a reasonable inference that her race was the "but-for" cause of her termination (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327 (2020)); *see also Weaver v. Cary Acad.*, No. 20-CV-593, 2021 WL 4428202, at *8 (E.D.N.C. Sept. 7, 2021) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010) (holding "[e]ven where the complaint plausibly alleges the reason an employer gave for the termination of employment was false, it still must 'establish a plausible basis for believing . . . that race was the true basis for [the plaintiff's] termination'").

[4] Plaintiff's filing of a "grievance" itself necessarily requires determining if the CBA has been violated. The CBA states that: (1) any grievance pursued by an employee must "contain a reference to the provision(s) of the [CBA] alleged to have been violated and a statement of the facts involved . . ."; and (2) any grievance "is defined as any dispute between [PSA] and a Flight Attendant . . . or the Union arising out of the interpretation or application of a provision of this [CBA] or the discipline or discharge of a Flight Attendant." *See* Doc. No. 10-1 §16.A.

[5] In the original Complaint Plaintiff expressly alleged that PSA violated the CBA, but that allegation was omitted from the FAC. See Doc. No. 1-2 ¶ 69.

White employees differently,[6] which is not found in the FAC, but was pled in the original Complaint "upon information and belief"). Therefore, the determination of the merit of Plaintiff's FAC Section 1981 claim will necessarily involve the interpretation and/or application of the CBA so it is precluded by the RLA. *See Davis v. Am. Airlines*, No. 3:19-CV-44-MOC-DSC, 2019 WL 2719909, at *4 (W.D.N.C. June 28, 2019), *aff'd sub nom. Davis v. Am. Airlines, Inc.*, 792 F. App'x 265 (4th Cir. 2020) ("If a plaintiff's claims require the interpretation or application of a collective bargaining agreement, the claims are preempted by the RLA regardless of whether the legal basis for the claims arise from a source other than the collective bargaining agreement."); *Polk*, 66 F.4th at 506-09 (applying RLA preclusion in the context of a dispute over an employee's drug testing).

Plaintiff's state law claim for invasion of privacy must also be dismissed. That claim alleges that Plaintiff was subjected to an excessive or improper drug screening under FAA and Department of Transportation ("DOT") regulations. The Federal Omnibus Transportation Employee Testing Act of 1991 ("FOTETA"), 49 U.S.C. §§ 45101, et seq., requires the FAA to prescribe random drug testing regulations for aviation employees responsible for safety-sensitive functions, including flight attendants. *See Tyson v. Launch Tech. Workforce Sols., LLC*, No. SA-23-CV-1423, 2024 WL 5330042, at *3 (W.D. Tex. Dec. 11, 2024) (citing 49 U.S.C. § 45102(a)). Those drug testing requirements in turn incorporate the DOT drug testing regulations found in 49 C.F.R. Part 40. *See* 14 C.F.R. § 120.109.

To establish exclusive and uniform standards for drug testing of aviation employees, Congress expressly preempted state laws purporting to regulate drug tests for such employees. *See* 49 U.S.C. § 45106 ("A State or local government may not prescribe, issue, or continue in effect a

---

[6] The comparison of PSA's treatment of Black and White employees would also likely require interpretation and application of the CBA requirements to determine what process was due in various circumstances.

law, regulation, standard, or order that is inconsistent with regulations prescribed under this chapter. However, a regulation prescribed under this chapter does not preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury, or damage to property."). FAA regulations "parallel" FOTETA's "broad" preemption language. *See Tyson*, 2024 WL 5330042, at *3 ("With regard to the drug-testing requirements, both [F]OTETA and the FAA regulations include express preemption provisions. The provisions have similar language and intent: namely, to preempt civil state law claims without affecting state criminal prosecutions.") (citing 14 C.F.R. § 120.121(a), (b)). "Together, the [FOTETA] and [FAA] regulations confirm the preeminence of FAA's drug-testing responsibility over any applicable state regulation . . . [and] overrid[e] any state 'law, regulation, standard, or order' that is 'inconsistent' with FAA's regulations." *Frank v. Delta Airlines Inc.*, 314 F.3d 195, 198 (5th Cir. 2002). Further, FOTETA and FAA/DOT regulations do not create private causes of action to enforce alleged violations of federally mandated drug testing procedures. *See Akins v. Valley Proteins, Inc.*, No. 2:21-CV-193-Z, 2022 WL 2292729, at *5 (N.D. Tex. June 23, 2022) (collecting cases).

Employees alleging improper drug testing have an administrative remedy. *See Frank*, 314 F.3d at 201 ("Alleged victims of improper [FAA] drug testing can seek recourse through an administrative procedure that includes judicial review in the federal courts."). Indeed, it appears that Plaintiff has pursued an administrative remedy. *See* Doc. No. 14 ¶¶ 15, 47 (alleging that, following her termination, "Plaintiff submitted a written complaint to the FAA Drug Abatement Division" regarding her drug screening, provided the FAA with evidence in the form of a photograph, and "corresponded with the [FAA] Division through at least September 3, 2024."). Most simply put, Plaintiff may not avoid the FAA administrative process by pursuing her

statutorily preempted state law invasion of privacy claim against PSA in this action. Therefore, Plaintiff's state law invasion of privacy claim against PSA will be dismissed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 15) is **GRANTED**;
2. Plaintiff's claims are **DISMISSED** without prejudice as precluded and preempted by federal statutes and regulations; and
3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: November 20, 2026

Kenneth D. Bell
United States District Judge